IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-55 |
| Plaintiff, | |
| v. | Judge Susan J. Dlott |
| GARY DILLINGHAM, | **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Reduction in Sentence (Doc. 41) and Defendant's Supplemental Memorandum of Law in Support of Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. 46). The United States opposes Defendant's Motion (Doc. 47). For the reasons set forth below and after considering Defendant's Supplemental Memorandum, Defendant's Motion for Compassionate Release will be **DENIED**.

## I. BACKGROUND

Defendant Gary Dillingham pled guilty to conspiracy to possess heroin, fentanyl, and cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Dillingham admitted that, as part of a conspiracy, he obtained heroin, cocaine, fentanyl, and fentanyl analogue from others to distribute in the Southern District of Ohio for money and other things of value. He further admitted that he directed another person in making such distributions and used the other person's residence to prepare, store, and distribute the illegal substances. (Doc. 27 at PageID 61.) As part of his plea agreement, the parties agreed to a sentence of 48 months of imprisonment pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. 27 at PageID 57.) On June 24, 2019, the Court sentenced Dillingham—as specified in his plea agreement—to a 48-month period of incarceration to run consecutive to the unrelated state court sentence he was already serving.

(Doc. 35.) Pursuant to the terms of the plea agreement, the Court dismissed the remaining claims against Dillingham. (*Id.*)

Approximately ten months later, Dillingham moved the Court for an order modifying his sentence to run concurrently with his three-year state court sentence due to his increased susceptibility to serious illness if he were to contract COVID-19, as he suffers from hypertension. (Doc. 38.) The Court explained that it could entertain his motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) only after he first sought such relief from his facility's warden and denied Dillingham's Motion. (Doc. 40.)

On February 4, 2021, Dillingham filed the instant pro se Motion for Reduction in Sentence and Motion for Appointment of Counsel (Doc. 41). Dillingham explained that he suffers from chronic hypertension, diabetes, and obesity, all of which increase his vulnerability to serious illness or death if he were to contract COVID-19 in prison. (*Id.* at PageID 99–100.) The Court granted his request for appointment of counsel, and his newly-appointed attorney filed an appropriate supplement in support of Dillingham's Motion (Doc. 46).

Although he is not yet 33 years old, the medical records offered in support of Dillingham's motion–dated October 21 through 27, 2020—indicate that he suffers from hypertension, diabetes, and obesity. (Doc. 41-1 at PageID 107, 111.) He also tested negative multiple times for the virus that causes COVID-19. (*Id.* at PageID 117, 119, 121, 123, 125, and 127.)

Dillingham is currently incarcerated at FCI-Terre Haute, a medium security federal correctional institution with an adjacent minimum security satellite camp. His anticipated release date is September 18, 2023.

## II. LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). "The compassionate release provisions were first included in the Sentencing Reform Act of 1984 . . . to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). The 1984 provisions empowered only the Bureau of Prisons ("BOP") Director to file a motion for compassionate release, "[y]et the Director seldom wielded this significant power." *United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020). For instance, the BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017. *Id.* (citing Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP)).

Frustrated that the Director acted so infrequently, Congress passed the First Step Act of 2018. "Section 603(b) of the First Step Act—titled 'Increasing the Use and Transparency of Compassionate Release'—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1105; *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Pursuant to § 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

3

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, under the current provisions, an incarcerated person can file for compassionate release after either exhausting the BOP's administrative process or thirty days after the warden received the compassionate release request, whichever is earlier. *Jones*, 980 F.3d at 1105. Once this administrative process has occurred, the Court employs a three step evaluation to determine: (1) whether "extraordinary and compelling reasons warrant" the requested sentence reduction; (2) whether the reduction is consistent with applicable Sentencing Commission policy statements; and (3) whether, considering the applicable section 3553(a) factors,[1] the reduction is warranted under the particular circumstances of the case. *Id.* at 1108 (footnote added); 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement [USSG] § 1B1.13." *Jones*, 980 F.3d at 1111 (concluding that § 1B1.13 applies only where the BOP Director files the compassionate release motion). A court's decision to grant compassionate release is discretionary. *Id.* at 1106. A person seeking sentence reduction bears the burden of proving

---

[1] Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and promote respect for the law; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care or other treatment; (5) the kinds of sentences available; (6) the sentencing guideline range; (7) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct; and (8) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a).

entitlement to compassionate release. *Ebbers*, 432 F. Supp. 3d. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).

**III. ANALYSIS**

In the case at bar, Dillingham exhausted the required administrative remedies by petitioning the warden for compassionate release at least thirty days prior to filing his motion. (Doc. 41-1 at PageID 129.) Therefore, his motion is ripe for consideration on the merits. *See United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

**A. Extraordinary and Compelling Reason**

Dillingham suffers from hypertension, diabetes, and obesity. (Doc. 41-1 at PageID 107, 111.) The Center for Disease Control and Prevention ("CDC") lists hypertension, diabetes, and obesity among the conditions that could increase an individual's risk of severe illness if he were to contract COVID-19. CENTERS FOR DISEASE CONTROL AND PREVENTION, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 21, 2021). In addition, as of April 21, 2021, the Bureau of Prisons reported the following data from FCI-Terre Haute: 1 inmate and 0 staff members with positive COVID-19 tests; 2 inmate and 0 staff COVID-19 deaths; and 716 inmates and 19 staff members recovered from COVID-19. BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed April 21, 2021). In addition, at Federal Correctional Complex-Terre Haute,[2] 270 staff and 840 inmates have been fully vaccinated

---

[2] The BOP website does not differentiate between FCI-Terre Haute and the satellite camp in reporting vaccinations administered. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed April 21, 2021). According to the BOP, FCI-Terre Haute houses 992 inmates while the camp houses 175 inmates.

5

against COVID-19. *Id.* Dillingham offers no evidence regarding whether the COVID-19 vaccine has been made available to him or whether he has been fully vaccinated.

"During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Provost*, 474 F. Supp. 3d 819, 825 (E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release). In this case, however, Dillingham's medical conditions appear chronic but manageable. (Doc. 41-1 at PageID 113 (medical record noting treatment compliance and recommending follow up care in six months).) In addition, the BOP reports only one active COVID-19 infection at FCI-Terre Haute and relatively high vaccination numbers at the Federal Correctional Complex-Terre Haute. In addition, the Court has no information regarding whether Dillingham has been offered or has received a COVID-19 vaccination. Under these circumstances, the Court cannot conclude that an extraordinary and compelling reason exists for Dillingham's compassionate release.

### B. 18 U.S.C. § 3553(a) Factors

Having concluded that no extraordinary and compelling reason supports Dillingham's compassionate release, the Court need not consider the section 3553(a) factors. *United States v. Jones*, 980 F.3d at 1108. However, the Court notes that Dillingham entered into a Rule 11(c)(1)(C) plea agreement specifying incarceration for 48 months. The United States Sentencing Guidelines recommended sentence for Dillingham's total offense level of 25 and criminal history of V is incarceration for 100 to 125 months. (Presentence Investigation Report ("PSR") at ¶¶ 34, 61.) In addition, his history includes incidents of violence against others, weapons offenses, and domestic violence allegations. (*Id.* at ¶¶ 47, 57, 65, 70, 76, 80.) Indeed,

he was serving a state sentence for felonious assault when he was served with the federal Indictment on unrelated charges here. (PSR at ¶ 18.)

## IV. CONCLUSION

Accordingly, the Court concludes that a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in this case. Defendant's Motion for Reduction in Sentence (Doc. 41) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court